UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| BRADLEY WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-cv-30-SKL |
| ) | |
| WELLS FARGO HOME MORTGAGE, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Before the Court is a motion to dismiss [Doc. 3] filed by Defendants Wells Fargo Home Mortgage, Inc., Wells Fargo Bank, N.A. (together, "Wells Fargo"), and Freddie Mac[1] (collectively, "Defendants"). Defendants seek dismissal of Plaintiff Bradley Ward's complaint, arguing it fails to state a claim on which relief may be granted. Plaintiff has filed a response in opposition to the motion [Doc. 10] with a supporting memorandum of law [Doc. 11]. Defendants have filed a reply brief in support of their motion to dismiss [Doc. 15], and this matter is now ripe.

Taking the allegations as true, Plaintiff appears to have been caught in a web of unfortunate circumstances and home loan modification mishaps and miscommunications. While the resulting foreclosure is a harsh outcome, especially when viewed through the lens of Plaintiff's wife's regrettable illness, the issue before the Court is whether the complaint alleges a

---

[1] Defendants state that Freddie Mac is actually the Federal Home Loan Mortgage Corporation, which Plaintiff has incorrectly referred to as Freddie Mac. As Freddie Mac is the named Defendant in Plaintiff's complaint, the Court will refer to this Defendant as Freddie Mac.

plausible legal claim against Defendants. Unfortunately for Plaintiff, it does not. For the reasons outlined below, Defendants' motion to dismiss [Doc. 3] must be **GRANTED**.

I.  BACKGROUND

Plaintiff originally filed his complaint in the Chancery Court for Bedford County on April 21, 2014, and Defendants removed the case to this Court on May 21, 2014 [Doc. 1-1 at Page ID # 6-15]. That same day, Defendants filed the instant motion to dismiss the case, alleging that Plaintiff failed to state a claim upon which relief may be granted [Doc. 3]. Both parties consented to proceeding before a magistrate judge [Doc. 17].

The following facts are taken as true and construed in the light most favorable to Plaintiff.[2] As set forth in the complaint, Plaintiff purchased a home in Shelbyville, Tennessee in 2009 (the "Property") [Doc. 1-1 at ¶ 7]. Wells Fargo loaned Plaintiff funds to purchase the Property, and Wells Fargo serviced the loan [*Id.* at ¶ 8]. Plaintiff timely made payments on the loan for some five years until September of 2013 [*Id.* at ¶ 9]. Plaintiff failed to make payments for the months of September, October, and December of 2013, after his wife's diagnosis of cancer caused her to work less, which reduced the family's income [*Id.* at ¶¶ 9-12].

Wells Fargo refused to accept partial payments on the loan [*Id.* at ¶ 13]. Instead, on December 20, 2013, Wells Fargo sent Plaintiff a package of information on how to apply for a loan modification under the Home Affordable Mortgage Program ("HAMP") [*Id.*]. Plaintiff filled out the loan modification forms and returned the forms to Wells Fargo via facsimile on January 13, 2014 [*Id.* at ¶ 14]. At that time, a foreclosure had not been scheduled [*Id.* at ¶ 15]. Shortly thereafter, Plaintiff was verbally notified that someone would contact him within two to

---

[2] In addition to the allegations set forth in the complaint, documents attached to the pleadings that are integral to Plaintiff's claims are considered. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

2

three weeks regarding his home loan modification application, but nobody did so [*Id.* at ¶¶ 16-17]. In the first week of February, Plaintiff contacted Wells Fargo to inquire about the status of his modification, and he was informed that his application would need to be resubmitted because Wells Fargo could not locate it [*Id.* at ¶ 18].

On February 15, 2014, Plaintiff received a notice of foreclosure on the Property, which set foreclosure for March 3, 2014 at 3:00 p.m. [*Id.* at ¶ 19]. After receiving the notice, Plaintiff again contacted Wells Fargo and he was advised by a "seven day recovery team" member that he should resubmit his modification application, and he did so [*Id.* at ¶ 20]. On February 27, 2014, Wells Fargo sent Plaintiff a letter (drafted February 24 and received by Plaintiff on March 3, 2014, the date of the foreclosure sale) that informed Plaintiff that his modification application was incomplete [*Id.* at ¶ 21]. Plaintiff communicated with Wells Fargo again on March 3, 2014, and Wells Fargo requested that Plaintiff send in an additional form, which Plaintiff did [*Id.* at ¶ 22]. Around 3:15 p.m. on March 3, 2014, Plaintiff received notification that his home loan modification was approved [*Id.* at ¶ 23]. He was later notified, however, that the foreclosure sale had proceeded at 3:00 p.m. and could not be reversed despite his home loan modification approval [*Id.*].

Freddie Mac now owns the Property as a result of the foreclosure sale and is threatening eviction [*Id.* at ¶ 24].

## II. STANDARD OF REVIEW

When a court is presented with a motion under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). While the complaint does not need "detailed factual

3

allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). That is, the facts presented must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Where, as here, federal jurisdiction is based on diversity, this Court applies the substantive law of the forum state—in this case, [Tennessee]." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). To discern Tennessee law, this Court will first look to the final decisions of that state's highest court; if a question remains unresolved by the highest court, this Court will predict how the state's highest court would resolve a question, treating intermediate state court decisions as persuasive authority. *See id.* at 358-59.

## II. ANALYSIS

Plaintiff's complaint asserts five causes of action against Defendants: (1) failure to comply with HAMP; (2) inducement to breach contract; (3) breach of the Servicer Participation

4

Agreement ("SPA")[3] (4) breach of the trial plan contract; and (5) deceptive trade practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq*. ("TCPA") [Doc. 1; see also Doc. 11 at Page ID # 72].

### A. Failure to Comply with HAMP and Breach of the SPA

In addressing the motion to dismiss, it is appropriate to group the HAMP and SPA claims to facilitate a discussion of the relevant law. Plaintiff alleges Wells Fargo violated HAMP in several ways, including by failing to allow sufficient time for Plaintiff to comply with the home loan modification program, by not communicating effectively with Plaintiff, by not notifying Plaintiff in writing twice that additional information was needed, and by not re-scheduling, stopping, or rescinding the foreclosure [Doc. 1-1 at ¶ 26]. Plaintiff also alleges Wells Fargo violated the terms of its SPA and he alleges that he is as a third-party beneficiary of the SPA harmed by said violation [Doc. 1-1 at ¶ 30].

In support of their motion to dismiss, Defendants argue that Plaintiff fails to state a claim under HAMP because borrowers such as Plaintiff do not have a private cause of action for

---

[3] A copy of the SPA, titled the "Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement," which was entered by Federal National Mortgage Association ("Fannie Mae") and Wells Fargo Bank, N.A., is attached to Plaintiff's response to the motion to dismiss [Doc. 11-1]. Assessment of the facial sufficiency of a complaint must ordinarily be undertaken without regard to matters outside the pleadings, but a court may "consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation and alteration omitted). When a party presents material outside the pleadings in connection with its motion to dismiss, a court may convert the motion into a motion for summary judgment or exclude the appended material and consider the matter only on the pleadings. *See* Fed. R. Civ. P. 12(d); *see Gunasekera v. Irwin*, 551 F.3d 461, 466 n.1 (6th Cir. 2009). Here, the SPA is referenced in the complaint and is central to the claims made in the complaint. Thus, consideration of the SPA does not convert the motion to one for summary judgment. As such, the Court will consider the SPA, analyze the motion pursuant to Fed. R. Civ. P. 12(b)(6), and base its decision solely on the pleadings of record and the SPA.

alleged violations of HAMP and are not intended third-party beneficiaries of HAMP or the SPA. In Plaintiff's response in opposition to the motion, he argues generally that courts have been willing to hold creditors liable for issues arising out of the loan modification process. Plaintiff also argues that Wells Fargo violated a number of HAMP guidelines and requirements and, while there may not be a private right of action under HAMP, the violations give rise to a right of action under his other pled legal doctrines.

HAMP is a federal program enacted pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 *et seq.*, that gives lenders incentives to offer mortgage borrowers a loan modification with more favorable terms. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012). "HAMP and its enabling statute do not contain a federal right of action, but neither do they preempt otherwise viable state-law claims." *Id.* at 555; *see also Goodman v. Park Place Securities, Inc.*, No. 1:12-cv-174, 2013 WL 8508580, at *3 (E.D. Tenn. Feb. 26, 2013). Therefore, a plaintiff can only bring a HAMP-related claim if state law provides one. *See Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 166-67 (6th Cir. 2014). To the extent Plaintiff's causes of action rest on HAMP alone, his claims fail as a matter of law. *See Wigod*, 673 F.3d at 556-57; *Goodman*, 2013 WL 8508580, at *3; *Johnson v. Flagstar Bank, FSB*, No. 2:12-CV-223, 2012 WL 6569346, at * 2 (E.D. Tenn. Dec. 17, 2012).

To the extent Plaintiff's claims rests on an assertion that Wells Fargo breached its contract with Fannie Mae, i.e., the SPA, he fails to allege a viable theory that Wells Fargo owed a contractual duty to him in connection with the SPA because only an intended third party beneficiary to a contract may maintain an action to enforce that contract under Tennessee law. *See, e.g.*, *Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1356 (6th Cir. 1991). To establish he is an intended beneficiary to the SPA, Plaintiff must establish (1) the

6

existence of a valid contract between the principal parties and (2) that the clear intent of the contract is to benefit him. *See id.*

"[T]he majority of federal courts who have reviewed actions involving HAMP have uniformly concluded that HAMP does not contain a private right of action or confer third party beneficiary status on borrowers with respect to servicing agreements under HAMP." *Johnson*, 2012 WL 6569346, at * 2 (quoting *Starkey v. First Magnus Fin. Corp.*, No. 3:11-1217, 2012 WL 4061204, at *6 (M.D. Tenn. Sept. 14, 2012)); *see also Goodman*, 2013 WL 8508580, at *3 (collecting cases). In *Goodman*, this Court recently held a borrower is not a third party beneficiary of a servicer's agreement to implement the HAMP program, such as the SPA. Plaintiff argues the facts of *Goodman* are distinct from the facts in this case, but Plaintiff has not shown how any such factual distinctions make any difference as to whether he is a third-party beneficiary of the SPA and he has cited to no case law supporting his claimed status as a third-party beneficiary.

Accordingly, Defendants' motion to dismiss will be **GRANTED** as to Plaintiff's causes of action asserting claims under HAMP and for breach of the SPA.

### B. Inducing Breach of the Mortgage Contract

Admitting he breached his mortgage contract due to the hardship resulting from his wife's illness, Plaintiff alleges Wells Fargo induced a further or continuing breach of the mortgage contract by encouraging him not to make his home loan payments while he was under consideration for a loan modification and by promising him that Wells Fargo would be willing to restructure his mortgage [Doc. 1-1 at ¶ 28]. Defendants move to dismiss this cause of action arguing that Plaintiff's allegations fail to state a cause of action for inducement of breach of contract under Tennessee law because he did not plead any malicious intent, he admitted to being

7

the first to breach the contract, and his damages were caused by his own default, not by Wells Fargo's invitation to apply for a loan modification.

Plaintiff argues in response that he was induced to further breach his home loan contract based upon an expectation that Wells Fargo would "comply with its own guidelines relating to the modification process" and follow the "MHA Handbook" that "servicers were contractually obligated to follow." [Doc. 11 at Page ID # 73, 76]. Specifically, Plaintiff claims Wells Fargo did not follow the MHA Handbook and prevented Plaintiff's participation in the foreclosure which was in violation of "its own rules and guidelines." [*Id.* at Page ID # 73-74].

"Tennessee recognizes both a common law and statutory action based on unlawful inducement of breach of contract." *Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 323 (6th Cir. 1985) (citing Tenn. Code Ann. § 47–50–109). Both the common law and statutory action have the following elements: "(1) the existence of a legal contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's malicious intent to induce breach of the contract; (4) a breach of contract proximately caused by defendant's actions; and (5) resulting damages to the plaintiff." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006) (citations omitted). Plaintiff has failed to allege the required elements; specifically he failed to plead any malicious intent or that his initial breach was caused by Defendants' actions. While it is not necessary to address Defendants' other arguments, it is notable that Plaintiff provides no law to support his arguments regarding an inducement to further breach a contract.

Accordingly, Defendants' motion to dismiss will be **GRANTED** as to Plaintiff's cause of action asserting claims for unlawful inducement of breach of contract.

### C. Breach of the Trial Plan

Plaintiff alleges he was advised that he was approved for a loan modification approximately 12 minutes after the foreclosure and that such approval would necessarily involve a trial plan under the SPA [Doc. 1-1 at ¶ 32]. Plaintiff alleges Wells Fargo's refusal to honor the loan modification and trial period plan damaged Plaintiff. Defendant argues there can be no breach of a trial period plan because no plan was entered, the only alleged breach occurred prior to the approval of the modification, and any oral trial period plan would be unenforceable.

Although Plaintiff alleges he was approved for a loan modification approximately 12 minutes after the foreclosure, he has not alleged he has a signed modification contract and trial period plan. Again, Plaintiff has provided not a single citation to any authority supporting his position. On the other hand, there is ample authority that trial period plans "are not binding modification contracts unless signed by both the borrower and lender." *Goss v. ABN AMRO Mortg. Grp.,* 549 F. App'x 466, 471 (6th Cir. 2013) (citing *Fed. Home Loan Mortg. Corp. v. Hassell,* No. 11–14564, 2013 WL 823241, at *6 (E.D. Mich. Mar. 6, 2013) ("Neither the Trial Plan nor the Partial Reinstatement Agreement unconditionally promises Plaintiff that her loan would be modified . . . .")).[4] Plaintiff does not allege the parties entered a signed or written trial period plan, nor does he even address this argument in his response to the motion to dismiss.

---

[4] Additionally, Defendants correctly point out that Tennessee law provides:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.

Tenn. Code Ann. § 29-2-101(b)(1).

9

Accordingly, Defendants' motion to dismiss will be **GRANTED** as to Plaintiff's cause of action asserting claims for breach of the trial period plan.

**D. Violation of the TCPA.**

Plaintiff's remaining claim is that Defendants violated the TCPA. The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a). To assert a sustainable claim under the TCPA, "a plaintiff must establish: (1) an ascertainable loss of money or property; (2) that such loss resulted from an unfair or deceptive act or practice; and (3) that the act or practice is declared unlawful under the TCPA." *Amour v. Bank of Am., N.A.*, 1:13-CV-144, 2013 WL 6497821, at *5 (E.D. Tenn. Dec. 10, 2013). "Although the TCPA imposes no single standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as a material representation, practice, or omission likely to mislead reasonable consumers to their detriment." *Id*. (citations, internal quotation marks, and alteration omitted). In his response to the motion to dismiss, Plaintiff argues that Wells Fargo violated two provisions of the TCPA by not honoring the home loan modification process, Tenn. Code Ann. § 47-18-104(b)(9) and Tenn. Code Ann. § 47-18-104(b)(27).

Subsection (b)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104(b)(9). Courts in Tennessee, however, have long held the TCPA does not apply to conduct related to foreclosure activities. *Amour*, 2013 WL 6497821, at *5; *Pursell v. First Am. Nat'l Bank,* 937 S.W.2d 838, 841-42 (Tenn. 1996); *Schmidt v. Nat'l City Corp.,* No. 3:06-CV-209, 2008 WL 597687, at *1, 3 (E.D. Tenn. Mar. 4, 2008). Apparently attempting to overcome the inapplicability of the TCPA to foreclosure proceedings, Plaintiff argues the deceptive practices of Wells Fargo that violated subsection (b)(9) are not directly
10

related to the foreclosure itself, but rather to the pre-foreclosure conduct of Wells Fargo during the modification process. Unfortunately for Plaintiff, the TCPA also simply does not extend to such negotiations and modifications. *See, e.g.*, *Amour*, 2013 WL 6497821, at *5 (citations omitted) ("Although Plaintiffs argue their claim is not targeted at the *foreclosure* but rather at the *modification* process, courts have held that the TCPA is also inapplicable to loan modification proceedings because they deal with '[c]redit terms of a transaction' specifically exempted from the TCPA's coverage.") (collecting cases); *Silvestro v. Bank of Am., N.A.*, No. 3-13-0066, 2013 WL 1149301, at *5 (M.D. Tenn. Mar. 19, 2013) ("The Court finds that renegotiation of a loan— that is, a loan modification application—involves the credit terms of a transaction and, therefore, the TCPA does not apply."); *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *7 (W.D. Tenn. July 2, 2013) ("[C]ourts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA.") (collecting cases); *Brooks v. Wells Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *6 (M.D. Tenn. Jan. 30, 2014) ("[C]ourts applying Tennessee law have consistently held that a lender['s] actions relating to foreclosure and debt collection, even when pursuing loan modification, are not covered by the TCPA."); *Jestes v. Saxon Mortg. Servs., Inc*., No. 2:11-00059, 2014 WL 1847806, at *12 (M.D. Tenn. May 8, 2014) (holding TCPA does not apply to processing of, and representations about, failed HAMP loan modification).

Turning to Plaintiff's remaining TCPA claim, Tenn. Code Ann. § 47-18-104(b)(27) prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division." Defendants correctly contend the complaint fails to state a claim for violation of this subsection

of the TCPA, because it does not provide a private cause of action. *See e.g., Amour*, 2013 WL 6497821, at *6. Thus, Plaintiff may not assert a claim under this catch-all provision of the TCPA.

Accordingly, Defendants' motion to dismiss will be **GRANTED** as to Plaintiff's final cause of action asserting violations of the TCPA.[5]

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [Doc. 3] will be **GRANTED** and, as no claims remain pending, this case will be closed.

An **ORDER** shall enter.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff also seeks injunctive relief, but a court can only enjoin a foreclosure as a remedy, not as a separate cause of action. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013); *see also Heussner v. National Gypsum Co.*, 887 F.2d 672, 677 n. 3 (6th Cir. 1989), *overruled on other grounds* (holding that where all substantive claims are properly dismissed there is no basis for injunctive relief).